IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2005

## STATE OF TENNESSEE, TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. DAVID H., ET AL.

Appeal from the Circuit Court for Perry County
No. 3358    Robert E. Lee Davies, Jr., Judge

---

### No. M2004-01043-COA-R3-JV - Filed March 21, 2006

---

After a hearing, the Circuit Court declared seven children to be dependent and neglected and determined that their parents had committed severe child abuse. The parents claim on appeal that the court erred by refusing their request that counsel be appointed to represent them at the hearing. After carefully reviewing the record, we find that the trial court failed to conduct a sufficient inquiry to determine whether or not the parents were financially able to retain their own counsel, and we accordingly vacate the order concluding that the children were dependent and neglected.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. Frank G. Clement, Jr., J., filed a dissenting opinion.

Dana M. Ausbrooks, Franklin, Tennessee, for the appellant, David H.

David M. Ausbrooks, Franklin, Tennessee, for the appellant, Mary Ellen H.

Paul G. Summers, Attorney General and Reporter; Dianne Stamey Dycus, Deputy Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. PROCEEDINGS IN THE JUVENILE COURT

On November 1, 2002, the Department of Children's Services filed an emergency petition in the Juvenile Court of Perry County to obtain temporary custody of eight children in a single family, ranging in age from two to sixteen.[1] The court granted the Department's petition, and the children were placed with family friends.

The trial court appointed an attorney to represent the parents and a guardian ad litem to represent the interests of the children. The parents' attorney filed a motion on their behalf for a hearing to determine if the children were dependent and neglected within the meaning of the law and asking that physical custody of the children be returned to them.

On February 27, 2003, DCS moved the court to terminate visitation and phone calls by the parents, and on April 7, 2003, the Guardian ad Litem filed an ex parte motion to suspend all visitation and communication between the children and their biological parents. It was revealed that the District Attorney had begun an investigation into allegations of sexual abuse of the children. After hearing the motion, the court barred visitation between the parents and some of the children and allowed only limited supervised visitation with the other children.

On July 23, 2003, the juvenile court conducted an adjudicatory hearing on the dependency and neglect petition. The court found there to be clear and convincing evidence that the children were dependent and neglected and that they had been subjected to severe physical, emotional and sexual abuse.[2] The parents then filed an appeal to the Circuit Court for a hearing *de novo*. *See* Tenn. Code Ann. § 37-1-159(a).

### II. PROCEEDINGS IN CIRCUIT COURT

After the final hearing in juvenile court, the appointed attorney who had represented the parents withdrew from that representation. On November 21, 2003, the parents filed new affidavits of indigency in the Circuit Court and asked that another attorney be appointed for them. Their affidavits listed weekly earnings of $598 for David H. and $200 for Mary Ellen H.[3] The only assets included in the affidavit were a few hundred dollars in the bank, and three vehicles, none of which was listed as being worth more than $300.

---

[1] The record indicates that the family was involved in a long history of problems in both South Carolina and Tennessee, which resulted in the children being placed in foster care a number of times.

[2] Pursuant to Tenn. Code Ann. § 37-1-129(c), a court hearing a petition alleging dependency and neglect is required to determine whether the parent(s) committed severe child abuse, as defined by statute.

[3] The record shows that David H. had earned an Associates Degree and worked as a crane operator, while Mary Ellen H. has earned her G.E.D. and worked part-time at a discount store.

After examining the affidavits, Judge Harris of the Circuit Court declined to appoint counsel for them. He signed the determination of nonindigency section of a standard form, which reads, "[i]t appearing, based upon the affidavit of indigency filed in this cause, and after due inquiry made, that the defendant is not an indigent person as defined by law," and added in his own handwriting, "considering combined income of husband and wife."

The final hearing in Circuit Court was conducted before Judge Davies over two full days, on February 11 and 12, 2004. Before evidence was taken, the parents renewed their motion that counsel be appointed for them, pointing out they had appointed counsel in the juvenile court and stating that they could not find an attorney willing to take their case for what they could afford. The written "Motion to Appoint Counsel or For Interlocutory Relief" explained the parents' financial situation more fully. Out of the father's gross weekly income of $594, the motion alleged that he paid $60 per week in insurance for the family and $55 per week in court-ordered child support. The motion also alleged the mother earned a gross income of $103 per week, out of which she paid $55 per week in child support.

The motion also recounted the parents' efforts to secure counsel, including a claim that the mother was told by an attorney at the Legal Aid Society that she qualified for the Society's services on the basis of her income, but the Society could not take the case due to the time it would require. The motion was supplemented by letters from two attorneys. One letter, dated January 30, 2004, was from the Legal Aid Society attorney, who stated that the Society did not have the resources to take their case, but that "you cannot appear on such an important matter without representation."[4] The other letter, dated February 9, 2004, was from a private attorney and said the attorney would require a $15,000 retainer plus an additional $1,000 for expenses before taking the case. In the motion, the parents alleged this attorney had stated that handling the matter through conclusion would probably cost $30,000. We note that the trial court later entered an order finding this case "complex and extended" pursuant to a request from the guardian ad litem related to attorney fees pursuant to Tenn. R. S. Ct. 13.[5]

After hearing argument from both sides on the question of appointment of counsel, Judge Davies denied the parents' motion, stating, "Well, I'm not going to go back and go behind what Judge Harris has done." Thereafter, David H. and Mary Ellen H. acted *pro se*. DCS asked the court if it wished "in the interest of judicial economy," to also hear its pending petition for termination of the parental rights of David H. and Mary Ellen H. at the same time as the dependency and neglect proceeding. The court ruled that it did not, because the parents had not received adequate notice.

---

[4] That attorney also stated that in a case like this one he would not even consider representing both parents. He estimated an attorney would need to spend at least 50 hours preparing for trial. His letter was dated January 30, 2004, and included an apology for not responding to the mother earlier.

[5] In that order, the court found that the case involved expert testimony and required two full days of trial and "an enormous time of court preparation due to volumes of records and other material pertaining to the seven children and their parents."

Eighteen witnesses testified at trial, including six social work professionals, the family who had custody of some of the children, the three oldest children, and various neighbors and acquaintances of the parents. At the conclusion of the proof, the court took the case under advisement. The Final Order of Adjudication declared that the seven[6] children were dependent and neglected pursuant to Tenn. Code Ann. § 37-1-102(b)(12). The court also found that the children had made significant progress since being placed with other families, and that they should remain with those families.[7]

The court's order included extensive and detailed findings of fact. Based on the specific findings, the court found that the parents had committed severe emotional and physical abuse against the children, as well as severe neglect, and sexual abuse against three of the children. This appeal followed.

## III. THE RIGHT TO AN ATTORNEY

As we indicated above, the parents were represented by appointed counsel in the juvenile court proceedings on the dependency and neglect petition, but not in Circuit Court because that court found that they were not indigent and therefore not eligible for such assistance. After the final hearing in Circuit Court, Mary Ellen H. and David H. filed new affidavits of indigency, which showed that they were both in the Perry County Jail and no longer had any income. The court conducted another hearing, found that the parents' financial circumstances had changed, and ordered that counsel be appointed for the upcoming proceeding to terminate their parental rights. Counsel was also appointed to represent them in this appeal.

Thus, throughout the various proceedings relating to these children, the parents were provided appointed counsel, except in the hearing that is the subject of the appeal. That hearing resulted in an order finding not only that the children were dependent and neglected, but also that the parents had committed severe child abuse. Such a finding triggers other statutory provisions. The most serious consequence of a finding that a parent has committed severe child abuse is that such a finding, in and of itself, constitutes a ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(4)("the parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court.") The ground itself is proved by a prior court order finding severe child abuse, and the issue of whether abuse occurred is not re-litigated at the termination hearing. Severe abuse must be proved by clear and convincing evidence. *Department of Children's Services v. M.S. & J.S.*, No. M2003-01780-COA-R3-CV, 2005 WL 549141 (Tenn. Ct. App. March 8, 2005) (perm. app. denied August 29, 2005).

---

[6]The court had previously severed the petition regarding the oldest child.

[7]Two almost identical documents entitled "Final Order of Adjudication" were entered. The first was entered March 12, 2004, and the second was entered September 20, 2004.

On appeal, the parents argue that provisions of the Tennessee and United States Constitutions gave them an absolute due process right to have counsel appointed for them in Circuit Court. The United States Supreme Court has held that constitutional due process does not require that counsel be appointed for indigent parents in every parental termination case. *Lassiter v. Dept. of Social Servs.,* 452 U.S. 18 (1981). Rather, the right to counsel in such proceedings depends upon a balancing of factors, including the private interest at stake, the government's interest, and the danger of an erroneous decision.[8] 452 U.S. at 27. *See also Mathews v. Eldridge*, 424 U.S. 319 (1976).

The *Lassiter* court acknowledged that in light of the importance of parental rights, and the circumstances that frequently surround proceedings for the termination of parental rights, appointment of counsel could be constitutionally required in many such cases. The court further noted that in many states the appointment of such counsel is required by law, and went on to say that "[i]nformed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but also in dependency and neglect proceedings as well." 452 U.S. at 33-34.

The Supreme Court of Tennessee has added its voice to the chorus of informed opinion mentioned above, by determining that in this state an indigent respondent in either a parental termination case or in a dependency and neglect case has a right to the services of a court-appointed attorney. Rule 13(c) of the Rules of the Supreme Court declares that "[a]ll general sessions, juvenile, trial and appellate courts shall appoint counsel to represent indigent defendants and other parties who have a constitutional or statutory right to representation according to the procedures and standards set forth in this rule." Section (d) of the rule lists the types of cases it covers, including "[c]ases under Titles 36 and 37 of the Tennessee Code Annotated involving allegations against parents that could result in finding a child dependent or neglected or in terminating parental rights." Tenn. R. S. Ct. 13(d)(2)(B).

The question for us, therefore, is not whether the parents in this case would have a right to appointed counsel if they were indigent. Clearly, they would have that right. The question is whether their qualification for appointed counsel was appropriately decided or whether a sufficient inquiry was conducted to made an accurate determination of their indigency or non-indigency.

Rule 13(e)(2) directs the court to make an inquiry into the financial status of a defendant in accordance with the procedures set out in Tenn. Code Ann. § 40-14-202 to determine whether a defendant is indigent and therefore entitled to an appointed attorney. That statute describes the required procedures as follows:

---

[8]The allegations in this case increased the importance of proper representation for the parents. Much of the evidence was derived from the testimony of social work professionals, and it is unlikely that an ordinary layperson would be able to effectively cross-examine such witnesses. The trial court subsequently declared the case complex and extended.

(b) Whenever an accused informs the court that such accused is financially unable to obtain the assistance of counsel, it is the duty of the court to conduct a full and complete hearing as to the financial ability of the accused to obtain the assistance of counsel, and, thereafter, make a finding as to the indigency of the accused. All statements made by the accused seeking the appointment of counsel shall be by sworn testimony in open court or written affidavit sworn to before the judge.

(c) When making a finding as to the indigency of an accused, the court shall take into consideration:
      (1) The nature of the services to be rendered;
      (2) The usual and customary charges of an attorney in the community for rendering like or similar services;
      (3) The income of the accused regardless of source;
      (4) The poverty level income guidelines compiled and published by the United States department of labor;
      (5) The ownership or equity in any real or personal property;
      (6) The amount of the appearance or appeal bond, whether the party has been able to obtain release by making such bond, and, if the party obtained release by making such bond, the amount of money paid and the source of such money; and
      (7) Any other circumstances presented to the court which are relevant to the issue of indigency.

Tennessee Code Annotated § 40-14-201 defines an indigent person as "any person who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney." If a trial court fails to make an adequate inquiry in response to an affidavit of indigency and a party is improperly denied the right to counsel as a result, the court's order may be vacated on appeal. *See State v. R.D.V.*, E2004-01216-COA-R3-PT, 2005 WL 623246 (Tenn. Ct. App. Mar. 17, 2005) (no Tenn. R. App. P. 11 application filed).

In the case before us, other than the reference on the standard form to "due inquiry," there is no indication in the record as to the scope of the inquiry made by the judge who first declined the parents' request for appointment of counsel. The court's notation mentioned only "combined income of husband and wife," a fact obtainable from the affidavits of indigency. The other factors found in Tenn. Code Ann. § 40-14-202 were not mentioned.

On the day of the final hearing in Circuit Court, the parents renewed their motion for the appointment of an attorney. They alleged that despite their income, they were unable to afford the services of a private attorney. The attorney for DCS argued that the parents should have filed their motion earlier, noting they had two and a half months between Judge Harris' order and the scheduled hearing to do so. The parents claim, however, that they undertook a serious but unsuccessful effort to find an attorney willing to take their case. Their claim is bolstered by letters from two attorneys.

While it would have been better for the parents to have renewed their motion before the first day of trial, when the many witnesses and others were gathered and ready to proceed, we cannot conclude that the unrepresented parents had given up their rights to a full inquiry into whether they had sufficient means to pay reasonable fees to an attorney.

Income alone is not the sole determinative of whether a person qualifies as indigent for purposes of appointment of counsel. In a complex case such as this one, a reasonable attorney fee could easily be beyond the financial ability of persons who are employed but earn modest wages. Thus, to the extent the original denial of indigency was based only on the parents' income, as the order implies, the required consideration of other factors was not present. The record before us does not indicate any hearing was held on the parents' renewed request for appointment of counsel. There is no indication the trial court considered all the relevant factors, including what would be reasonable fees, even though the parents' motion clearly put that factor at issue. To the contrary, the trial court declined to revisit the issue of the parents' eligibility for appointed counsel.

Based on the record we have, and in view of the complexity of this case and the importance of the rights involved, we cannot find that the parents' request for appointment of counsel was appropriately denied. At the least, the parents were entitled to a thorough hearing in compliance with the requirements of Tenn. Code Ann. § 40-14-202 to determine if they were without sufficient means to pay reasonable attorney fees for representation in this case, and thus entitled to appointed counsel pursuant to Supreme Court Rule 13(d)(2)(B). We have no choice but to vacate the order of the trial court.

Our decision does not affect the present custody arrangements for the children. In fact, in an opinion issued contemporaneously with this one, we have affirmed the termination of these parents' parental rights. Consequently, custody of the children is not an issue, and the statutes relative to termination of parental rights apply.

## IV.

The judgment of the Circuit Court is vacated. We remand this case to the Circuit Court of Perry Count for further proceedings consistent with this opinion.[9] Tax the costs on appeal to the appellee, the State of Tennessee.

_____
PATRICIA J. COTTRELL, JUDGE

---

[9] Because the parents' rights have been terminated in subsequent proceedings and that termination has been affirmed, it is unlikely there will be any further action on the dependency and neglect petition, it having been rendered moot. We remand simply for whatever action the trial court deems necessary.