IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 6, 2008 Session

## MELANIE GAYLE KING (LYON), ET AL. v. JAMES DAVID KING

**Appeal from the Circuit Court for Cannon County**
**No. 501     J. Mark Rogers, Judge**

**No. M2007-01156-COA-R3-PT - Filed February 22, 2008**

The mother and stepfather of two minor children filed a petition against the father of the children to terminate the father's parental rights. The petitioners alleged, *inter alia*, that the father abandoned the children by failing to exercise any of the residential time and vacation time awarded to the father in the divorce and that he had willfully failed to visit the children during the four months preceding the filing of the petition. Following a bench trial, in which the mother and stepfather were represented by counsel, but the father was *pro se*, the trial court dismissed the petition to terminate based upon the finding that "due to the costs of transportation between the parties respective homes in Giles County and Cannon County and due to [the father's] limited income," the petitioners had failed to establish the ground of abandonment. The mother and stepfather have appealed, contending the trial court failed to correctly apply the law to the facts of this case and that the evidence clearly and convincingly proves that the father's failure to visit was willful due to the fact he had a vehicle, for which he could afford insurance, and the cost of driving the approximately sixty miles between their homes was within his financial means. We have determined that the trial court committed reversible error when it failed to appoint a guardian ad litem to represent the best interests of the minor children, which is mandated by Tenn. S. Ct. R. 13 § 1(d)(2) in proceedings to terminate a parent's rights when the petition is contested. We have also determined that if the father was indigent, which fact may be significant to the issue of willfulness, he had a constitutional right to appointed counsel. As Tenn. S. Ct. R. 13 § 1 (c) and (e) mandates, when the father appeared without counsel, the trial court had an affirmative duty to advise the father of his rights and to conduct an indigency hearing to determine if he was without sufficient means to pay reasonable attorney fees for representation in this case and, if so, to appoint counsel to represent him. We therefore vacate the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion, including if necessary a new trial on the merits of the issues raised in the petition filed in this matter.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Stephen W. Pate, Murfreesboro, Tennessee, for the appellants, Melanie Gayle King (Lyon) and Bradley N. Lyon.

William H. Bryson, Woodbury, Tennessee, for the appellee, James David King.

**OPINION**

In 2004, the mother and father of the two minor children, who are the subject of this action, were granted a divorce in the Chancery Court of Maury County at which time the mother was designated as the primary residential parent of the two minor children, the father was awarded residential time and vacation time, and the father was ordered to pay child support. Thereafter, the mother married Bradley N. Lyon. According to the mother, as time went by she became increasingly frustrated with the father's failure to exercise his residential time and vacation time, which he was awarded in the divorce. She also became increasingly frustrated with the father's failure to pay child support in the amount set by the court. Although the father usually paid some child support each month, the mother claimed he seldom paid the amount he was ordered to pay, and thus, a substantial arrearage developed, and as a consequence, the mother and step father assumed an even greater financial burden to support the children, which was exacerbated by the father's failure to exercise his parenting time.

After two years of little to no visitation and erratic and insufficient child support, the mother decided to take action to terminate the father's parental rights and to facilitate the adoption of her children by their stepfather. Accordingly, the mother and her husband filed the petition at issue to terminate the father's parental rights with respect to their two minor children and for her new husband, the children's stepfather, to adopt both children. The petition was filed on August 21, 2006. After the father was served, he filed an informal answer to the petition, written in his hand on lined notebook paper, admitting most of the allegations in the petition, including a relationship with a sixteen year old, whom he impregnated. Although the father denied some of several other specific allegations, he did so in an inartful manner and did not generally deny or specifically deny all allegations. As a consequence, his failure to properly deny some of the allegations could be construed as admissions.[1]

At trial, the mother testified that the father had not visited the children at any time during the four months preceding the filing of the petition. Following the close of the petitioners' proof, the trial court advised the father that the petitioners had carried their initial burden of proof, and if the father were to choose not to testify, the court could only draw one conclusion – one in favor of the petitioners. As a consequence, the father took the witness stand to testify, but only briefly. The father stated that he had one visit with the children and that was at his parents' home, but he did not

---

[1]For example, the petition alleged in paragraph 4 that since the entry of the final decree of divorce that the father "failed to exercise residential time with the minor children, with father not exercising any overnight residential time and father willfully failing to visit with the children for more than four months prior to the filing of this petition, with father only contacting the children by phone on a very sporadic basis." His answer to paragraph 4 read: "denied [sic] tried to get them for several different weekends but she already had plans."

recall when that occurred. In response to counsel's question concerning whether the visit occurred between April 21 and August 21, 2006, being the four-month period preceding the filing of the petition, the father stated "to the best of my knowledge" that visit occurred between April 21 and August 21. The father admitted that he had not exercised his parenting time or summer vacation time and that the children had not spent an evening with him since the divorce. He claimed his failure to exercise his parenting time or summer vacation was a result of being without full time employment. He did not state how much he earned or could earn, but that he could not afford to drive his truck sixty miles to Cannon County, Tennessee to see the children. He also explained that he only made enough money to pay on his truck, to pay insurance for his truck, and to pay his share of the utilities.[2] He also testified that he did not have enough money to do all of these things and pay child support. Following the father's testimony, the mother returned to the witness stand to rebut his testimony that he had visited the children during the critical four-month period. She testified that the father's only visit with the children occurred when she took them to his parents' house which was during the children's spring break in March, and therefore, his only visit with the children was not within the four-month period preceding the filing of the petition.

At the close of the hearing, the trial court held that the father had not abandoned the children. This appeal followed. The mother and her husband contend on appeal that the evidence established that the father's failure to visit the children during the four months preceding the filing of the petition, or alternatively that the one brief visit at his parents' home, was merely a token visit, which constitutes abandonment pursuant to Tenn. Code Ann. §36-1-102.

Although the mother and stepfather have presented issues that are worthy of our consideration, and the father has also presented a worthy defense to the issues raised, we have determined that we may not consider the merits of this appeal for two compelling reasons. One, the trial court failed to appoint a guardian ad litem to represent the best interests of the minor children, which is mandated by Tenn. S. Ct. R. 13 § 1(d)(2). Two, if the father was indigent, he would have been entitled to appointed counsel at trial; yet, an inquiry was not made to determine if he was indigent and he was not informed of the fact he would have been entitled to appointed counsel. We will discuss each of these reasons in detail below.

## ANALYSIS

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.*, 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006). The party seeking to terminate parental rights must prove two elements. That party, the petitioner, has the burden of proving that there exists a statutory ground for termination. Tenn. Code Ann. § 36-1-113(c)(1) (2005); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Furthermore, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2) (2005); *In re F.R.R., III*, 193 S.W.3d 528,

---

[2]The father testified that he lived with friends and shared certain living expenses with them.

530 (Tenn. 2006). *See In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child).

GUARDIAN AD LITEM

With the adoption of Tennessee Supreme Court Rule 13, our Supreme Court has mandated that a guardian ad litem shall be appointed to represent the best interests of the children who are the subject of a petition to terminate a parent's rights, unless the termination is uncontested.[3] Tenn. S. Ct. R. 13 § 1(d)(2)(D). This case was contested by the father, yet no guardian ad litem was appointed to represent the parties' children.

The appointment of a guardian ad litem is not discretionary; it is mandatory in a proceeding to terminate parental rights if the termination is contested. *See In re A.D.C.,* No. E2006-00771-COA-R3-PT, 2007 WL 677882, at *1 (Tenn. Ct. App. March 7, 2007); see Tenn. S. Ct. R. 13; *see also In re TBL*, No. M2005-02413-COA-R3-PT, 2006 WL 1521122 (Tenn. Ct. App. June 2, 2006). Further, the appointment of a guardian ad litem is mandatory even if no one requests that a guardian ad litem be appointed. *In re A.D.C.,* 2007 WL 677882, at *1.

*In re The Adoption of a Male Child, D.P.E.*, No. E2005-02865-COA-R3-PT, 2006 WL 2417578 (Tenn. Ct. Aug. 22, 2006), provides an explanation of the importance of the role of the guardian ad litem, which is to advocate for the best interests of the child. As we explained:

> The guardian ad litem functions independently of other parties to the proceedings in recognition of the possibility that the child's best interests may not coincide with the interests of all other parties. It is the general duty of the guardian ad litem to undertake any and all legally sanctioned actions consistent with insuring that the child's best interests are protected. In fulfilling this duty, the guardian ad litem must, among other things, interview the other parties and witnesses, review pertinent records, and file and respond to pleadings on the child's behalf. The importance and necessity of a guardian ad litem in a termination case was made clear by the Tennessee Supreme Court in Tenn. S.Ct. R. 13 § 1(d) 2(D).

*D.P.E.*, 2006 WL 2417578, at *3.

The court in *D.P.E.* went on to explain, "the guardian ad litem represents . . . only the child," and the "child's best interest is the focus of these proceedings and without a guardian ad litem, the

---

[3]The rule goes on to state that a single guardian ad litem shall be appointed to represent an entire sibling group "unless the court finds that conflicting interests require the appointment of more than one guardian." Tenn. S.Ct. R. 13 § 1(d)(2)(D).

child has no voice." *Id.* Due to the fact the guardian ad litem's "involvement may well have altered the outcome of this case," the court found the failure to appoint a guardian ad litem was not harmless error. *Id.*

If the termination proceeding is a contested case, the failure to appoint a guardian ad litem to represent the children's interests requires us to vacate the judgment and remand for a trial, and on remand, the trial court shall, *inter alia,* appoint a guardian ad litem to represent the best interests of the minor children. *In re A.D.C.,* 2007 WL 677882, at *1 (citing *D.P.E.*, 2006 WL 2417578). No guardian ad litem was appointed to represent the best interests of the children in this contested termination proceeding. We therefore find the failure to appoint a guardian ad litem to represent the best interests of the children was reversible error.

<u>AN INDIGENT'S RIGHT TO APPOINTED COUNSEL</u>

In most civil proceedings, a litigant has no constitutional right to appointed counsel. That is not the case in proceedings to terminate parental rights if the defendant parent is indigent. The entitlement to appointed counsel in a parental termination action is controlled by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Tennessee Constitution. *See In re M.E.,* No. M2003-00859-COA-R3-PT, 2004 WL 1838179, *11-16 (Tenn. Ct. App. Aug. 16, 2004). Tennessee Supreme Court Rule 13 § 1(e)(2) makes it clear that when a defendant appears without counsel to defend a petition to terminate the parent's parental rights, the trial judge presiding over the case has an affirmative duty to make an inquiry into the financial status of a defendant to determine whether a defendant is indigent and therefore entitled to an appointed attorney. An indigent person is statutorily defined as "any person who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney."[4] Tenn. Code Ann. § 40-14-201.

Section One of Tenn. S. Ct. R. 13, which is entitled "Right to counsel and procedure for appointment of counsel," states the purpose of the rule is "to provide for the appointment of counsel in all proceedings in which an indigent party has a statutory or constitutional right to appointed counsel . . . ." Rule 13 § 1(a)(1)(A). The rule states, in pertinent part, that all general sessions, juvenile, trial, and appellate courts "shall appoint counsel to represent indigent defendants and other parties who have a constitutional or statutory right to representation (herein "indigent party" or "defendant") according to the procedures and standards set forth in this rule." Tenn. S. Ct. R. 13 § 1(c). If the defendant is constitutionally entitled to representation, the trial court's duty to advise a non-represented defendant of his right to counsel, and to inquire as to the defendant's indigency, is not discretionary. To the contrary, it is mandatory and compliance with the rule must be documented.

---

[4]"Income alone is not the sole determinative of whether a person qualifies as indigent for purposes of appointment of counsel. In a complex case such as this one, a reasonable attorney fee could easily be beyond the financial ability of persons who are employed but earn modest wages." *State v. David H*., No. M2004-01043-COA-R3-JV, 2006 WL 721302, at *5 (Tenn. Ct. App. Mar. 21, 2006).

Tenn. S. Ct. R. 13 § 1 (d)(2) compels the trial court to advise any parent without counsel in cases involving allegations against the parent that could result in finding a child dependent or neglected or in terminating parental rights of their right to be represented by counsel and that counsel will be appointed if the parent is indigent.

The statutory procedures to be employed by the trial court to determine whether a defendant is entitled to appointed counsel are set forth in Tenn. Code Ann. § 40-14-202. *See State v. David H.*, No. M2004-01043-COA-R3-JV, 2006 WL 721302, at *4 (Tenn. Ct. App. Mar. 21, 2006). The pertinent provisions are as follows:

> (b) Whenever [the defendant] informs the court that [he/she] is financially unable to obtain the assistance of counsel, it is the duty of the court to conduct a full and complete hearing as to the financial ability of the [defendant] to obtain the assistance of counsel, and, thereafter, make a finding as to the indigency of the [defendant]. All statements made by the [defendant] seeking the appointment of counsel shall be by sworn testimony in open court or written affidavit sworn to before the judge.
>
> (c) When making a finding as to the indigency of [the defendant], the court shall take into consideration:
>
> > (1) The nature of the services to be rendered;
> > (2) The usual and customary charges of an attorney in the community for rendering like or similar services;
> > (3) The income of the [defendant] regardless of source;
> > (4) The poverty level income guidelines compiled and published by the United States department of labor;
> > (5) The ownership or equity in any real or personal property;
> > . . . ; and
> > (7) Any other circumstances presented to the court which are relevant to the issue of indigency.

Tenn. Code Ann. § 40-14-202.

"Upon finding a party indigent, the court shall enter an order appointing counsel unless the indigent party rejects the offer of appointment of counsel with an understanding of the legal consequences of the rejection."[5] Tenn. S. Ct. R. 13 § 1(e)(3). If the indigent parties refuses to accept the services of appointed counsel, "such refusal shall be in writing and shall be signed by the

---

[5]The rule also provides that "[a]ppointed counsel shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. S.Ct. R. 13 § 1(e)(5).

indigent party in the presence of the court," the trial court shall acknowledgment the fact, and the written refusal of counsel shall be made a part of the record. Tenn. S. Ct. R. 13 § 1(f)(1) - (2).[6]

The record reveals the father filed a *pro se* Answer to the Petition, he appeared at trial to defend the action without counsel, and the transcript of the evidence reveals that his primary defense was his indigency. The record, however, provides no indication that the trial court made any inquiry regarding the father's indigency or his ability to retain counsel to represent him in the proceedings, wherein his parental rights were subject to being terminated, and the record does not contain a writing to confirm that he knowingly waive the right to appointed counsel.

In the termination of parental rights case of *In re M.E.,* No. 2004 WL 1838179, *11-16, we vacated a judgment terminating a parent's parental rights due to the deprivation of the parent's right to an attorney. In that matter, the trial court had determined at the inception of the termination action that the father was indigent and entitled to be represented by counsel, and appointed counsel to represent the parent; however, counsel failed to represent him. *Id*. at 12. Although, the events that necessitated vacating the judgment in *M.E.* are more complex than here, they are nonetheless compelling. The juvenile court in *M.E.* made the determination at the commencement of the termination proceedings that the father was indigent and appointed counsel to represent him; however, after counsel was appointed to represent him, the father was incarcerated and remained incarcerated for the next two years. While the father was incarcerated, his court appointed counsel ceased representing him. The record did not explain why and no order was entered granting counsel leave to withdraw. Nevertheless, the father was without the benefit of counsel while the termination action languished. Although the father remained incarcerated and his appointed counsel "withdrew," no substitute counsel was ever appointed to represent the father when the matter came on for trial, and the record provided no basis to conclude that the father was no longer indigent when the matter was tried. To the contrary, two years of incarceration should have assured his indigency. Nevertheless, the case went forward, and the father participated in the trial proceedings.[7] Following the conclusion of the trial and after this appeal was filed, the father's indigency was put at issue. As a consequence, this court conducted a review of the record, and we noted that he was without counsel on appeal. Because he claimed he was indigent, we remanded the issue to the juvenile court to determine whether he was currently indigent and therefore entitled to appointed counsel on appeal. The juvenile court promptly conducted a hearing and determined the father was indigent, whereupon juvenile court appointed an attorney to represent the father on appeal.

---

[6]"In addition, the court shall satisfy all other applicable constitutional and procedural requirements relating to waiver of the right to counsel. The indigent party may act pro se without the assistance or presence of counsel only after the court has fulfilled all lawful obligations relating to waiver of the right to counsel." Tenn. S.Ct. R. 13 § 1(f)(2).

[7]The facts of that case are most troubling because the father retained counsel on the eve of trial, but the counsel failed to appear for most of the seven days of trial. To appreciate the tortured details concerning the grossly inadequate representation provided by the attorney retained on the eve of trial, read the opinion in *M.E.* starting at page 14. *In re M.E.,* 2004 WL 1838179, at *14.

When the merits of the case were considered on appeal, we noted that the father had been declared indigent and appointed counsel at the inception of the termination proceedings, and that the father's financial situation deteriorated due to two years of incarceration, and based on these facts, the father had been entitled to appointed counsel throughout the proceedings in juvenile court but was without the benefit of counsel at critical times. As a consequence, we vacated the judgment terminating the father's parental rights due to the deprivation of his right to an attorney and remanded the case to the juvenile court for a new trial.

Here, the father appeared without counsel at trial to contest the termination petition. Moreover, the father's defense to the claim of abandonment was wholly based on his alleged financial limitations. Each of these facts, standing alone, compelled the trial court to conduct an indigency inquiry and to inform the father of his constitutional right to counsel as mandated by Tenn. S. Ct. R. 13. The record fails to establish that the trial court complied with the mandatory provisions of the rule.

## IN CONCLUSION

The judgment of the trial court is vacated, and this matter is remanded for the trial court to appoint a guardian ad litem to represent the best interests of the children and to determine if the father is presently indigent, and if so to appoint counsel to represent him, and to afford the parties a new trial on the petition and matters at issue as set forth in the petition filed on August 21, 2006.[8] Costs of this appeal are assessed against the mother and stepfather.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[8] Pursuant to Tenn. R. Civ. P. 15, the pleadings may be amended upon timely motions of the parties, if leave of court is granted.