IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 3, 2016

IN RE C.D.

Appeal from the Juvenile Court for Montgomery County
No. 14JV957     Tim Barnes, Judge

_____

No. M2016-00275-COA-R3-PT – Filed August 30, 2016
_____

The Department of Children's Services filed a petition to terminate the parental rights of
G.D. (Mother) to her child, C.D. (the Child). The trial court found clear and convincing
evidence of one ground supporting termination. The court also found, by the same
quantum of proof, that termination is in the best interest of the Child. Mother appeals.
We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H.
DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Elizabeth P. Pugh, Clarksville, Tennessee, for the appellant, G.D.

Herbert H. Slatery III, Attorney General and Reporter, and Rachel E. Buckley, Assistant
Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of
Children's Services.

OPINION

I.

On November 13, 2012, DCS received a referral regarding physical abuse of the
Child by her Father[1] and Stepmother. At that time, all three were residing in Germany
where Father was stationed in the military. The Child, who was nine years old, was
interviewed by military personnel. She disclosed that her Stepmother had burned her
vaginal area with a heated knife. During an examination of the Child, medical personnel

_____
[1] On May 7, 2014, Father surrendered his parental rights to the Child. He is not a party to
this appeal.

observed a scar in the area of her vagina. The Child stated that Father had made her lie naked on the bed while he hit her with a belt, leaving lacerations and scars on the Child's back. Both Father and Stepmother confirmed these allegations. Further, Stepmother admitted that she had punched the Child in the face. The Child mentioned other instances of abuse: (1) Father and Stepmother tied her up and beat her; (2) Father and Stepmother threatened to put her in the stove naked and then turn it on; and (3) Father and Stepmother threatened to send her back to Mother in Haiti where, according to the Child, she had been prostituted and molested on a daily basis. She also said that, while in Haiti, she was burned with cigarettes on a frequent basis. Military police removed the Child from the custody of Father and Stepmother. DCS was contacted to provide assistance protecting the Child going forward.

On January 4, 2013, DCS filed a petition alleging the Child was dependent and neglected. The petition also alleged severe abuse. On the day of filing, the trial court signed a protective order giving DCS temporary legal custody of the Child. At that point in time, Mother's specific whereabouts were unknown. On June 16, 2014, the trial court held an adjudicatory hearing. Despite DCS's efforts, it had been unable to contact her. DCS was informed by the Haitian government that Mother was believed to have been displaced by the 2010 earthquake. There had been no contact with her since the earthquake. At the conclusion of the hearing, the Child was adjudicated dependent and neglected. Apparently, an order on this matter was not entered at that time.

On July 22, 2014, DCS filed another petition, this time seeking to terminate Mother's parental rights. In the petition, DCS alleged three separate grounds for termination: (1) abandonment due to Mother's failure to visit the Child, said ground being pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) (2014) and 36-1-102(1)(A)(i) (2014); (2) abandonment as a result of Mother's failure to support the Child pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i); and (3) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). On October 20, 2014, the trial court entered its order, which concluded that Mother had abandoned the Child. The order confirmed the court's prior adjudication of the Child's dependency and neglect.

Mother was finally contacted in January 2015. DCS mailed her a series of documents pertaining to an upcoming hearing. It also told her that DCS could procure translation services for her. In addition, DCS sent Mother a copy of the petition to terminate her parental rights, which had been translated into Haitian Creole, Mother's native language. Thereafter, Mother informed DCS that she had received a copy of the petition and was in the process of obtaining a visa to appear for the upcoming hearing.

On January 22, 2015, DCS filed a petition to vacate the trial court's order arising out of the adjudicatory hearing. DCS sought the vacating of the trial court's October 20, 2014 order because the court lacked personal jurisdiction over Mother when the order was entered. The trial court subsequently granted DCS's petition to vacate.

After multiple continuances, the trial court held a hearing on October 1, 2015, which Mother attended. At that hearing, the trial court (1) established that Mother had been properly served; (2) denied Mother's oral motion for visitation with the Child based on the concerns of the guardian ad litem; and (3) set an adjudicatory hearing for October 8, 2015. Following the adjudicatory hearing, the trial court entered an order on October 21, 2015, which made the following findings:

> The [c]ourt finds clear and convincing evidence that the allegations in the petition are true, and that the [C]hild is dependent and neglected pursuant to [Tenn. Code Ann.] § 37-1-102(b)(12) and severely abused pursuant to [Tenn. Code Ann.] § 37-1-102(b)(21). Specifically, the [c]ourt finds that [the Child] was a victim of sexual abuse at a very early age. In the interview of [the Child] conducted by [the] Child Protective Services Investigator . . . who testified at the hearing in this matter, the [C]hild made very graphic disclosures of sexual abuse that included language and descriptions that are not commonly known by a seven year old child, which was [the Child's] age at the time of the interview. This [c]ourt finds the disclosures made to [the Investigator] credible and the circumstances surrounding the disclosure meet the requirement of indicating trustworthiness. The [C]hild disclosed being allowed to view pornography by . . . [M]other, that she was sexually active at the age of four, that she engaged in sexual behavior with her brother and a friend . . . and recounted being raped by two adult men at the home of her uncle in Haiti. Because of the extent of the disclosed sexual behavior, this [c]ourt finds that . . . [M]other knew or should have known that the [C]hild was being victimized, and therefore, failed to protect the [C]hild from acts that meet the statutory definitions of rape, aggravated sexual assault, rape of a child, and incest. The [c]ourt therefore finds that the [C]hild is a victim of severe abuse and . . . [M]other is the perpetrator of said abuse by her failure to protect the [C]hild.

In addition to the sexual abuse, [Mother] sent [the Child] to reside in the United States in 2011 with . . . [F]ather and between the time the [C]hild came to this country until her placement in foster care in January 2013 . . . [M]other only spoke to the [C]hild twice by phone and had no contact with the [C]hild since her placement in foster care. Mother provided no testimony regarding her efforts to contact the [C]hild and she has been unavailable to the [C]hild or as a caretaker for the [C]hild. The [c]ourt therefore finds that . . . [M]other has willfully abandoned the [C]hild by her failure to make efforts to maintain regular contact with her and is, therefore, a dependent and neglected child pursuant to [Tenn. Code Ann.] § 37-1-102(b)(12)(a).

(Numbering in original omitted.)

On November 6, 2015, DCS filed an amended petition to terminate Mother's parental rights. The amended petition relied upon only one ground, *i.e.*, severe child abuse by Mother pursuant to § 37-1-102(b)(21) (2014). DCS subsequently had the amended petition translated into Haitian Creole and sent by certified mail to Mother, who was then residing in Georgia. The trial court scheduled a hearing on the amended petition for December 10, 2015. However, on December 9, 2015, Mother informed the trial court that she would be unable to attend the hearing. The trial court granted her one last continuance and rescheduled the hearing for January 21, 2016. Mother again failed to appear at the hearing scheduled for January 21, and the trial court proceeded with the hearing after determining that another continuance was not in the best interest of the Child. On February 4, 2016, the trial court entered an order terminating Mother's parental rights after finding clear and convincing evidence supporting the ground of severe child abuse. In addition, the trial court held that there was clear and convincing evidence that termination was in the Child's best interest.

## II.

Mother filed a notice of appeal on February 2, 2016, raising the following issue, as taken verbatim from her brief:

[Whether] [t]he evidence of record is insufficient, as a matter of law, to sustain the [t]rial [c]ourt's finding that the State met the Tenn. Code Ann. § 36-1-113 criteria for terminating

4

> [Mother's] parental rights to [the Child] on the basis of severe
> abuse by clear and convincing evidence.

(Numbering in original omitted.)

### III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold

5

that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has recently delineated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." ***In re Adoption of S.T.D.***, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing ***Seals v. England/Corsair Upholstery Mfg. Co., Inc.***, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

When analyzing the sole ground for termination – severe child abuse by Mother – the trial court concluded the following:

6

By order entered October 21, 2015, this [c]ourt found that [Mother] committed severe child abuse against [the Child] pursuant to Tenn. Code Ann. § 37-1-102(b)(21)(C), in that . . . [M]other knowingly failed to protect the [C]hild from multiple, frequent acts of sexual abuse that meet the statutory definition of rape, aggravated sexual assault, rape of a child and [incest]. Therefore, the [c]ourt finds that clear and convincing evidence supports termination of [Mother's] parental rights based on this ground.

Our review of the record demonstrates that the evidence does not preponderate against the trial court's factual findings. Tenn. Code Ann. § 37-1-102(b) defines severe child abuse:

> (21) "Severe child abuse" means:
>
> > (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause seriously bodily injury or death;
> >
> > (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).
> >
> > (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;
> >
> > (C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402,

7

and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]

"The ground itself is proved by a prior court order finding severe child abuse, and the issue of whether abuse occurred is not re-litigated at the termination hearing." **State v. David H.**, 247 S.W.3d 651, 655 (Tenn. Ct. App. 2006); *see also* Tenn. Code Ann. § 36-1-113(g)(4) (termination of parental rights is warranted when a parent "has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against the child who is the subject of the petition[.]") "Thus, if there is a finding of severe child abuse . . . one ground for termination of the parent's parental rights is effectively established." **In re Samaria S.**, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011).

In the present action, the record reflects that, prior to the termination hearing, the trial court entered an order on October 21, 2015, adjudicating the child dependent and neglected based upon a finding that Mother had committed severe child abuse by failing to protect the Child from "acts that meet the statutory definitions of rape, aggravated sexual assault, rape of a child, and incest." The record reflects that Mother did not appeal this dependency and neglect order. As a result, this adjudication constitutes a final order. *See* **In re Serenity S.**, No. W2014-00080-COA-R3-PT, 2014 WL 6612571, at *6 (Tenn. Ct. App., filed Nov. 24, 2014). "Once there has been a finding of severe child abuse in a final order, the doctrine of res judicata prevents parents from re-litigating the issue of whether they committed severe child abuse in a subsequent proceeding to terminate their parental rights." **In re Joshua C.**, No. E2016-00081-COA-R3-PT, 2016 WL 4069288, at *3 (Tenn. Ct. App., filed July 28, 2016) (citing **In re Dakota C.R.**, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012); **In re Matthew T.**, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *15 (Tenn. Ct. App., filed Apr. 20, 2016)). Accordingly, the trial court's finding of severe child abuse in the dependency and neglect proceeding – being an unappealed from final order – is res judicata.

## V.

After finding that there is a statutory ground warranting termination of Mother's parental rights, we now focus on whether termination is in the Child's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i):

8

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent

the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d at 499 (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

In the present action, the trial court's February 4, 2016 order terminating Mother's parental rights included the following "best interest" analysis:

> Here, the [c]ourt concludes that termination is in the [C]hild's best interest. [Mother] failed to protect the [C]hild from horrific sexual abuse while the [C]hild was in her care. [Mother] has paid no support nor ha[s] she maintained regular visitation or contact with the [C]hild. In the entire time the [C]hild was in foster care, [the Child] only spoke to . . . [M]other once. . . . [The Child] has expressed that her greatest fear was that . . . [M]other would appear and take her back to Haiti. The [c]ourt finds that there is no meaningful relationship between [the Child] and . . . [M]other. Therefore, the [c]ourt concludes that termination of [Mother's] parental rights is in the [C]hild's best interest.

The evidence does not preponderate against the trial court's "best interest" analysis. The record includes a finding, by clear and convincing evidence, that the Child was the victim of horrific and prolonged sexual abuse, which started at an extremely early age while she was in the custody of Mother in Haiti. On its own, this finding, which Mother did not appeal, should be sufficient for us to determine that termination of Mother's parental rights is in the Child's best interest. However, this finding is further supported by the court's finding that Mother failed to maintain regular visitation with the Child or provide support of any kind. Furthermore, the record reflects that the Child has

previously expressed to her therapist that "her worst fear was her mom coming back . . . to get her." In our view, this evidence clearly indicates that no meaningful relationship exists between Mother and the Child. This conclusion is further reinforced by the evidence in the record showing that the Child has resided in a nurturing home for over three years now with prospective foster parents who love and care for her. Accordingly, we conclude, as a matter of law, that the trial court was correct in holding there is clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest.

## VI.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, G.D. This case is remanded for enforcement of the trial court's judgment and for the collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE